UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA


IN RE:

**MELVIN L. HAMPTON**                                    **CASE NO. 12-11241**
**JUDITH S. HAMPTON**

DEBTORS                                                  CHAPTER 7


**JOHN JOHNSON**

PLAINTIFF

V.                                                       **ADV. NO. 13-1040**

**MELVIN L. HAMPTON**

DEFENDANT


### MEMORANDUM OPINION

John Johnson sued debtor Melvin L. Hampton for a judgment declaring nondischargeable under 11 U.S.C. §523(a)(6) Hampton's debt to Johnson memorialized in a state court judgment for damages resulting from an automobile accident.  The plaintiff did not prevail first, because he did not prove that the defendant willfully and maliciously caused his injuries; and second, because his theory of recovery in the state court proceeding estops him from pursuing a judgment of nondischargeability under 11 U.S.C. §523(a)(6).

### Facts

Johnson's claim against Hampton arose on February 24, 2007, when their cars collided on O'Neal Lane between Old Hammond Highway and Florida Boulevard in Baton Rouge, Louisiana.  Johnson and his wife later sued Hampton and State Farm Automobile Insurance

Company ("State Farm"), Hampton's automobile insurance carrier.[1]  Johnson's petition alleged

that the "sole cause of the accident was the negligence/inattention/fault of Hampton,"[2] a

contention the jury accepted in finding Hampton solely at fault and awarding Johnson damages

of $365,263.64.[3]  The jury did not find that Hampton had intentionally, willfully or maliciously

caused the injuries.[4]

Hampton eventually filed chapter 7.  Johnson's dischargeability lawsuit followed.

**Admission of Affidavits of Kharla Taylor and Paul Marks**

The first issue is resolution of plaintiff's objections to affidavits the defendant offered at

trial.

With the plaintiff's consent, in lieu of live testimony the defendant introduced affidavits

from Kharla Taylor, the State Farm adjuster assigned to Hampton's claim; and Paul Marks, a

lawyer who defended both State Farm and the debtor in state court.  The plaintiff objected to

admission of parts of Kharla Taylor's affidavit as comprising expert opinion testimony from a

witness not qualified as an expert.  He challenged part of Paul Marks's affidavit as comprising

inadmissible legal conclusions.

*a.  Plaintiff's Objections to Taylor Affidavit*

Johnson objects to the admission of three statements in Taylor's affidavit:

Paragraph 4 – "the facts of this claim support the position that the collision
between insured and John Johnson was a result of mere

---

[1]  "John and Peggie Johnson v. Melvin L. Hampton and State Farm Insurance Agency," Suit No. 560471, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana.  Exhibit Defendant E.

[2]  Exhibit Defendant E, p. 2, ¶5.  Johnson amended the petition on March 5, 2008 to add a claim against Reginald Mercante.  Exhibit Defendant E, p.4, ¶1(C).

[3]  November 22, 2011 Judgment, Nineteenth Judicial District Court, Exhibit Defendant I.  The court also rendered judgment against State Farm for $25,000.

[4]  November 9, 2011 Jury Verdict Form, Exhibit Defendant I, pp. 3-4.  *See also* Statement of Uncontested Facts ¶k in Pretrial Order (P-63).

2

negligence and was not intentionally caused by [Hampton]."

Paragraph 6 – "[a] Petition for Damages was filed against the debtor and
State Farm based upon acts of negligence of the insured,
Melvin Hampton."

Paragraph 7 – "[i]f the accident was an intentional act of the insured, State
Farm probably would not have provided Mr. Hampton with
a defense."

Johnson objects to Taylor's statement in paragraph 4 as an inadmissible legal opinion

from a lay witness.

Federal Rule of Evidence 701 makes a lay witness's opinion testimony admissible if it is

"(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the

witness' testimony or the determination of a fact at issue and (c) not based on scientific,

technical, or other specialized knowledge with the scope of Rule 702."  Johnson does not argue

that Taylor lacked personal knowledge of State Farm's handling of the claim;[5] rather he contends

that Taylor's statement in paragraph 4 necessarily is based on specialized legal knowledge that

she lacks.

Taylor is a lay witness not qualified to offer expert opinion evidence regarding the cause

of the collision that led to plaintiff's claim against Hampton.  Accordingly the plaintiff's

objection to the introduction of paragraph 4 is sustained.

The plaintiff also objects to paragraphs 6 and 7 of Taylor's affidavit as either inadmissible

legal opinions or else irrelevant to the ultimate issues for trial.  However, those statements are

not legal opinions: rather, they merely characterize the lawsuit as a claim for negligence and

suggest that State Farm would not have defended Hampton had it believed his acts were

intentional.  They are appropriate subjects of lay opinion testimony because they are rationally

---

[5]  Federal Rules of Evidence 602 and 701 require that a lay witness have personal knowledge as a foundation for the admission of lay opinion testimony.

3

based on her review of the facts, her evaluation of the accident, the state court petition, her

experience as an insurance adjuster, her knowledge of the terms of the debtor's insurance policy

and her familiarity with State Farm's business practices.  Too, her affidavit testimony assuredly

is relevant to understanding State Farm's position in defending Johnson's claims.

For these reasons, Johnson's objections to Kharla Taylor's statements in paragraphs 6 and

7 of the affidavit are overruled.

### b.   Plaintiff's Objections to Marks Affidavit

Johnson objects to the admission of several statements within Paul Marks's affidavit:

Paragraph 7 – "the facts of this claim support the position that the collision between insured and John Johnson was a result of mere negligence and was not intentionally caused by [Hampton]."

Paragraph 8 – "[a] Petition for Damages was filed against the debtor and State Farm based upon acts of negligence of the insured, Melvin Hampton."

Paragraph 12 – "State Farm probably would not have defended this suit on behalf of the insured and repeatedly offered to pay policy limits if the facts evidenced that insured intentionally caused the accident and/or that he was willful and wanton.  Upon information and belief, intentional or willful and wanton acts are not covered under the State Farm policy in effect at the time of the above referenced accident."

Johnson contends that Marks cannot give opinion testimony regarding the ultimate

conclusions the court is to draw.  That argument is unsound.

Marks's affidavit demonstrates that he is a lawyer licensed to practice in Louisiana and

has specialized knowledge, skill, education and experience in legal insurance defense, but also

that he based his statements in the affidavit on his first-hand knowledge of the facts regarding

State Farm's general practices and its defense of Hampton.  The affidavit recites that State Farm

defended Hampton in state court on a theory of negligence; that the insurer repeatedly offered to

settle for the policy limits; and opines that State Farm may not have hired him to defend

Hampton or settled the case had Johnson established that its insured's actions were willful and

intentional.  All the statements in Marks's affidavit are within the ambit of lay witness opinion

testimony: Marks merely was explaining his client's approach to defending the lawsuit, and like

Ms. Taylor, his testimony was rationally based on his experience handling the claim for State

Farm.  Marks's affidavit does not usurp the court's role as finder of fact.

All of Marks's affidavit is admissible.

### Law and Analysis

*Johnson Has Not Proven the Debt Non-dischargeable Under 11 U.S.C. §523(a)(6)*

Bankruptcy Code section 523(a)(6) excepts from discharge debts that arise from "willful

and malicious injury by the debtor."  The Fifth Circuit analyzed the elements of section 523(a)(6)

in *In re Miller*, 156 F.3d 598 (5th Cir. 1998), following the Supreme Court's construction of that

section in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998).  The

*Miller* court concluded that malicious injury and willful injury mean the same thing: "acts done

with the actual intent to cause injury."  It also held that "an injury is 'willful and malicious' where

there is either an objective substantial certainty of harm or a subjective motive to cause harm."

*Miller*, 598 F.3d at 606.  *See also In re Caton*, 157 F.3d 1026, 1030 (5th Cir. 1998).  However,

debts that arise from recklessly or negligently inflicted injuries do not fall within section

523(a)(6), and so may be discharged.  *Geiger*, 523 U.S. at 64, 118 S.Ct. at 978.

Johnson repeatedly claimed that his injuries from the accident with Hampton were the

result of "willful and malicious" conduct within the meaning of 11 U.S.C. §523(a)(6) because he

contended that before the incident Hampton was drag racing with another driver, Reginald

Mercante.[6]  The evidence does not support that allegation.

The day of the accident, Hampton approached the O'Neal/Old Hammond intersection in

the left lane of O'Neal where Mercante's car was waiting in the right lane for the red signal to

change.  The signal turned green as the debtor reached the intersection and Hampton tried to

overtake Mercante in order to occupy the single lane into which the two-lane northbound

roadway narrowed.  However, Mercante accelerated and forced Hampton into the roadway's

"caution lane."[7]  Mercante's car either clipped the debtor's auto when Hampton tried to return to

the travel lane, or Hampton's auto may have clipped Mercante's as it overtook him.  In any event,

Hampton lost control while attempting to return to the proper traffic lane and collided with

Johnson's oncoming vehicle.

John Johnson testified that he believed that both Hampton and Mercante were drag

racing.  However, no independent evidence corroborated his opinion; indeed, the evidence casts

doubt on Johnson's ability to have seen enough of the approaching vehicles to determine what

transpired before they came into his view.  Specifically, the investigating officer, Louisiana State

Trooper Ryan Riley, reported that Johnson's vehicle was coming around a slight curve as it

approached the point where it collided with Hampton's.  Johnson's potential bias aside, his

testimony on that point therefore was not persuasive.[8]

Evidence regarding the debtor's actual speed before the accident conflicts and is

inconclusive, unreliable and in any case unpersuasive.

---

[6] *See* Complaint, ¶2 (P-1); Amended Complaint, ¶¶2,9 (P-28).

[7] The "caution lane" of O'Neal Lane was a striped section of pavement between the northbound and southbound lanes, just north of O'Neal's intersection with Old Hammond Highway.

[8] Diagram of accident, p. 4 of Trooper Riley's report, Exhibit Plaintiff 1.  The diagram from the accident report was the only part of the report admitted into evidence.

The debtor estimated that he was traveling about 45 mph, and in any case not traveling so fast that he would have been unable to stop at the intersection had the traffic light remained red for northbound O'Neal traffic.  Mercante, whose car had been stopped at the light, stated that Hampton was traveling between 60 and 70 mph when his car passed Mercante's, basing this estimate on his own claim that he was only traveling 40 to 45 mph when Hampton passed him before the accident.  In addition to the absence of foundation supporting the accuracy of Mercante's lay opinion, his testimony is biased: Johnson had sued both him and Hampton for damages.  Therefore, it is discounted.

Witness Charles Smith testified that Hampton and Mercante both were traveling at high speed.  But Smith viewed the entire incident in his rear-view mirror facing southbound while stopped for the red signal at Old Hammond Highway.  The testimony also was inconsistent with Smith's deposition testimony that he was unable to say how fast Hampton's car was traveling.  As a result, Mr. Smith's testimony regarding vehicle speed was entitled to little weight.

Finally, Trooper Ryan Riley reported that Hampton's speed approached 75 mph.  However, Trooper Riley did not witness the accident and estimated Hampton's speed on accident scene evidence comprising vehicle damage and witnesses' statements (one of whom was Mercante, who was not unbiased; and the second Charles Smith).  The trooper did not photograph the scene or vehicle damage, make measurements or find skid marks from any vehicle involved in the collision.  Because the basis for the state trooper's estimate of Hampton's speed is doubtful, the court also gives it no weight.

In addition, though the state trooper's actions after his investigation are not dispositive, they suggest that the debtor's actions were neither reckless nor intentional.  Specifically, Trooper Riley did not cite Hampton for either reckless operation or drag racing.[9]

In summary, the evidence did not even establish that the accident from which plaintiff's injuries arose was the result of recklessness, much less the debtor's willful and malicious act.

Creditors have not succeeded in obtaining declarations of nondischargeability in actions against debtors whose conduct was merely negligent or reckless but not willful and malicious, where they did not produce evidence that the debtor intended to cause an injury or that injury was substantially certain to result from the debtor's actions.  *See, e.g., In re Nevarez*, 415 B.R. 540 (Bankr. D.N.M. 2009) (debtor who drove more than 10 miles over the speed limit and ran a red light was reckless but no evidence established that his actions were willful or malicious within the meaning of 11 U.S.C. §523(a)(6)); *In re Kokenge*, 279 B.R. 541 (Bankr. E D. Tenn. 2002) (debtor who irresponsibly and unjustifiably drove on snowy road at speeds exceeding 90 mph was not willful and malicious under section 523(a)(6)).

The evidence established only that Hampton acted negligently, as the state court jury found.  Therefore, Hampton's debt to Johnson is dischargeable.

### *Johnson is Judicially Estopped from Pursuing Hampton on the theory that the Debtor's Actions were Willful and Malicious*

Even had Johnson proved that Hampton's actions fell within Bankruptcy Code 523(a)(6)'s reach, the plaintiff is not entitled to judgment because his theory is inconsistent with the basis for liability Johnson alleged in his state court lawsuit and therefore estops him from pursuing Hampton.

---

[9]  Trooper Riley cited Hampton for *careless* operation (La. R.S. 32:58) and improper lane usage (La. R.S. 32:79).

Judicial estoppel is an equitable doctrine that can be used to prevent a party from asserting a position in a legal proceeding that is inconsistent with a previously held position. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012). "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993).

The application of judicial estoppel requires the party seeking to invoke it to prove that:

(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position;

(2) a court accepted the prior position; and

(3) the party did not act inadvertently.

*Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (citations omitted).

First, Johnson's claim that the debtor intentionally and willfully engaged in drag racing leading to the 2007 collision is plainly inconsistent with his allegations in state court. His state court petition alleged that the "sole cause of the accident was the negligence/inattention/fault of Hampton,"[10] not that Hampton acted intentionally or with malice. Nor did plaintiff offer any evidence that the state court judgment rested on evidence that Hampton was drag racing. Indeed, both Marks's and Taylor's affidavits suggest that State Farm would have denied coverage to Hampton had evidence in the state court proceedings supported a conclusion that he acted willfully or intentionally.

As to the second *Reed* element, the evidence established that the state court in rendering judgment accepted the jury's findings that Hampton was negligent. Those findings do not

---

[10]  Exhibit Defendant E, p. 2, ¶5.

9

suggest that the jury concluded that Hampton acted intentionally, willfully or maliciously.

Finally, the fact that Johnson's *amended petition*, like the original petition, alleges only that

Johnson was injured as the result of Hampton's "negligence/inattention/fault"[11] suggests that

Johnson did not act inadvertently in advancing his theory of the case in state court.

In summary, Johnson's state court judgment against Hampton rested on a claim of

negligence, which made the debt it represented it dischargeable in Hampton's later chapter 7

liquidation.  To try to prevent that result, Johnson filed this lawsuit contending for the first time

that Hampton acted willfully or maliciously.  The doctrine of judicial estoppel is intended

specifically to thwart this sort of strategic behavior.  " 'Where a party assumes a certain position

in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply

because his interests have changed, assume a contrary position.' " *Matter of Cassidy*, 892 F.2d

637, 641 (7th Cir. 1990), *quoting Davis V. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39

L.Ed. 578 (1895).[12]

The plaintiff is judicially estopped from claiming that Hampton's debt to him is non-

dischargeable under 11 U.S.C. §523(a)(6).

### *Hampton did not Waive the Defense of Judicial Estoppel*

Finally, Johnson argues that Hampton waived the defense of judicial estoppel by not

raising it in his answer or in any other pleading before trial.

Litigants must urge the defense of judicial estoppel as an affirmative defense under

Federal Rule of Civil Procedure 8(c), adopted by Federal Rule of Bankruptcy Procedure 7008.

---

[11]   Exhibit Defendant E, p.5, ¶5.

[12]   The *Cassidy* opinion bears some similarity to this dispute.  There, the Seventh Circuit held that a debtor whose tax debt had been declared non-dischargeable by the Tax Court on the debtor's motion for summary judgment was judicially estopped from later arguing that the Tax Court lacked jurisdiction to determine dischargeability.

*McCaskey*, 9 F.3d at 378.  However, a party need only plead judicial estoppel, like any other

affirmative defense, "with enough specificity or factual particularity to give the plaintiff 'fair

notice' of the defense that is being advanced."  *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th

Cir. 1999).  A defendant has given the plaintiff fair notice if the defense is sufficiently articulated

to keep the plaintiff from being "unfairly surprised."  *Id*.[13]

Hampton preserved the defense.  Specifically, Hampton's answer[14] urged as an

affirmative defense:

> [T]he matter before this court has been fully litigated to final judgment … the
> claim of the Plaintiff is based upon the same collision tried in the state court.
> Plaintiff is now seeking to present a different theory of his case than asserted at
> the trial level … plaintiff failed to try his case under this new theory at the trial
> level, and as such, Plaintiff should be precluded from re-litigating the issue on a
> different cause of action involving the same parties."

Hampton set forth in adequate detail his contention that Johnson's claim that the debtor

maliciously and willfully injured him is not consistent with the negligence theory Johnson

advanced in state court.  The debtor's answer adequately pled the defense of judicial estoppel to

give Johnson fair notice that Hampton intended to urge it.[15]  Hampton thus did not waive his

judicial estoppel defense.

## Conclusion

John Johnson has not proven that the debt owed to him by Hampton is non-dischargeable

under 11 U.S.C. §523(a)(6).  Alternatively, Johnson is judicially estopped from claiming that

defendant Melvin Hampton willfully and maliciously caused injury to him.  Johnson's theory is

---

[13]  Nor are the parties alone permitted to invoke judicial estoppel: a court on its own motion may urge its application
because the doctrine of judicial estoppel is designed to protect the judicial process rather than the litigants.  *New
Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001).

[14]  Answer to Complaint, ¶19 Second Affirmative Defense (P-35).

[15]  In addition, Hampton's memorandum supporting his motion for summary judgment (P-50) makes a reference to
"estoppel" in its conclusion.

inconsistent with his claims in the state court lawsuit and he cannot now advance a theory of the

case that is inconsistent with that on which he obtained relief in state court.

Baton Rouge, Louisiana, August 26, 2014.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE